UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

DICKIE HEARTS

        Plaintiff,

    v.

PEACHY CORP.

        Defendant.

------------------------------------------------------------

Civ. No. 25-2932

COMPLAINT

      Plaintiff, DICKIE HEARTS ("Plaintiff" or "Mr. Hearts") by and through his undersigned counsel, EISENBERG & BAUM, LLP, hereby states his Complaint against Defendant, PEACHY CORP. ("Defendant" or "Peachy")

## INTRODUCTION

      1.    .Plaintiff is a deaf individual who relies on American Sign Language ("ASL") as his primary and preferred means of communication. For approximately one year, from September 2022 to April 2023, Defendant provided Plaintiff with in-person ASL interpreters for his medical appointments at their facility, acknowledging this as an effective and appropriate accommodation for his disability.

      2.    In August 2023, Defendant abruptly discontinued this accommodation and insisted on using Video Remote Interpreting ("VRI") services instead, despite Plaintiff's explanation that VRI would be ineffective given the nature of the medical procedures he receives, which often require him to lie down in positions that would make viewing a video screen impractical or impossible.

      3.    When Plaintiff attempted to advocate for his needs through proper channels, including enlisting the assistance of a professional ASL interpretation service provider who offered

to match VRI rates, Defendant not only continued to refuse appropriate accommodation but also retaliated by permanently banning him from all Peachy locations nationwide, baselessly claiming he had harassed their employees

4. Plaintiff now brings this civil rights action brought under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), seeking declaratory, injunctive, and monetary relief to redress Defendant's unlawful disability discrimination and retaliation against Plaintiff.

**PARTIES**

5. Plaintiff DICKIE HEARTS is a resident of New York who is substantially limited in the major life activities of hearing and speaking. Thus, he has a disability within the meaning of city, state, and federal civil rights laws.

6. Plaintiff is a professional actor and artist, and a member of both SAG-AFTRA and AEA. His ability to access medical services affects not only his personal well-being but also his professional career.

7. Defendant PEACHY CORP. is a professional corporation engaged in the practice of dental medicine with a principal place of business located at 281 Hudson Street, New York, NY 10013. Defendant does business as Peachy Studios ("Defendant" or "CPDA"), located at 200 West 57th Street, Suite 303, New York, NY 10019. Peachy operates medical facilities providing aesthetic treatments and services to the public. Peachy is a "public accommodation" within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(F), as it operates a "professional office of a health care provider, hospital, or other service establishment."

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under federal law, specifically Title III of the ADA, 42 U.S.C. § 12181 et seq.

9. This Court has supplemental jurisdiction over Plaintiff's NYCHRL claims pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that they form part of the same case or controversy

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to these claims occurred in the Southern District of New York, and Defendant maintains its headquarters at 281 Hudson Street, New York, NY 10013 and operates facilities within this district.

## STATEMENT OF FACTS

11. From September 10, 2022 to April 2023, Plaintiff Hearts received medical services at Defendant Peachy's Manhattan West location at 385 9th Avenue, Suite 70, New York, NY 10001.

12. During this period, Defendant provided Plaintiff with in-person American Sign Language ("ASL") interpreters for all medical appointments as a reasonable accommodation for effective communication.

13. These in-person interpreters were necessary for effective communication during medical procedures that required Plaintiff to assume positions that made viewing a remote video screen impractical or impossible.

14. Plaintiff regularly received Botox treatments at Defendant's facility, which required him to lie in various positions on the examination table while physicians administered injections to specific facial and neck areas.

15. During these Botox procedures, Plaintiff was required to maintain precise positioning as directed by medical staff, often with his head tilted at angles that would prevent consistent visual access to a stationary video screen.

16. Effective communication during Botox procedures requires real-time interpretation of detailed medical instructions and the ability for Plaintiff to immediately report sensations or concerns to medical staff.

17. In-person ASL interpretation services allowed the interpreter to move freely within the treatment room to maintain continuous visual communication with Plaintiff regardless of his required position during procedures.

18. Defendant never communicated any intention to discontinue providing in-person ASL interpretation services during this period.

19. On December 3, 2022, following Plaintiff's scheduled appointment, a manager employed by Defendant informed Plaintiff that Defendant could no longer provide an in-person ASL interpreter and would substitute Video Remote Interpreting ("VRI") services instead.

20. Plaintiff ideclined this proposed accommodation as inadequate for effective communication and subsequently contacted Janice Rimbler, Chief Executive Officer of All Hands In Motion, LLC ("AHIM"), an ASL interpretation service provider, on December 5, 2022.

21. Ms. Rimbler thereafter communicated with a representative of Defendant, believed to be Brittany Lammers, regarding Plaintiff's need for in-person interpretation services.

22. Through these communications, Ms. Rimbler and Defendant's representative reached an agreement to continue providing Plaintiff with in-person ASL interpretation services.

23. Plaintiff attended his next appointment at Defendant's facility on March 27, 2023, where Defendant provided in-person interpretation services without any indication that VRI services would be substituted in the future.

24. Defendant's staff expressed no concerns about the presence of Plaintiff's in-person interpreter, Emilio Garcia, during this March 27, 2023 appointment.

25. On or about August 11, 2023, Plaintiff requested an in-person ASL interpreter for his upcoming appointment, consistent with the established pattern of accommodation.

26. On August 12, 2023, when Plaintiff submitted formal documentation of this request, Defendant denied this request.

27. On August 14, 2023, Ms. Rimbler contacted Defendant on Plaintiff's behalf regarding this denial of accommodation.

28. During this communication, Ms. Rimbler explained the medical necessity for in-person interpretation given the nature of Plaintiff's treatment and offered to reduce AHIM's service rates to match those charged by Defendant's VRI provider.

29. Defendant rejected this proposed compromise and falsely represented that Defendant had previously discussed the discontinuation of in-person interpretation services with Plaintiff during his April 25, 2023 appointment.

30. This representation by Defendant is demonstrably false, as both Plaintiff and Mr. Garcia were present at the April 25, 2023 appointment no such discussion regarding discontinuation of in-person interpretation services occurred.

31. On August 18, 2023, Mr. Hearts contacted Peachy's local office through Video

Relay Service (VRS) to discuss his accommodation needs.

32. Video Relay Service (VRS) is a telecommunications service that allows people who are Deaf, hard of hearing, or have speech disabilities to communicate with hearing individuals in real-time using sign language to a hearing person using a telephone. The user connects with a sign language interpreter through video, and the interpreter relays the conversation between the signing user and the hearing person via voice.

33. During this nearly one-hour call, Mr. Hearts, tried to educate the customer service representative and professionally expressed frustration about the denial of appropriate accommodations.

34. At no point during this call did he ever use abusive language or engaged in any harassing behavior.

35. During this call, Peachy staff members acknowledged they were accustomed to seeing in-person interpreters provided for Mr. Hearts' appointments over the previous year, but they received directives from corporate that it would no longer continue.

36. During the call the customer service representative self-identified as also a part of the "hearing-impaired community".  Mr. Hearts, drawing upon his experience as a member of the Deaf community, engaged in a respectful educational dialogue about the preferred terminology in the community. He explained that many members of the Deaf community prefer identity-first language such as "Deaf" rather than "hearing-impaired." Mr. Hearts explicitly welcomed and affirmed the representative's connection to the community while also sharing information about opportunities to learn ASL.

37. After trying to educate  why in-person interpreters would be more appropriate and effective than VRI under the circumstances and realizing that Peachy's stance on the issue was

unlikely to change, Mr. Hearts ended the call by politely asking the representative to please "figure it out."

38. On August 21, 2023, despite Mr. Hearts expressing willingness to try VRI services due to time constraints related to his upcoming travel, Defendant's General Counsel informed him that he was permanently banned from all Peachy locations nationwide.

39. The General Counsel claimed this ban was due to Mr. Hearts being an "abusive bully".

40. Mr. Hearts vehemently denied such allegations and spent over an hour defending himself and educating general counsel.

41. The next day on August 22, 2023, Defendant's General Counsel sent an email to Mr. Hearts confirming he is permanently banned.

42. These allegations from Peachy are false and appear to be pretext for discrimination and retaliation against Mr. Hearts for advocating for his legally protected rights to effective communication in the form of an ASL interpreter.

43. As a result of Defendant's actions, Mr. Hearts has suffered emotional distress, humiliation, and loss of access to medical services. He reports feeling afraid to request in-person ASL interpreters for other medical services for fear of similar retaliation, impacting his ability to advocate for his needs and access appropriate medical care.

44. Mr. Hearts still wishes to return to Peachy studios, but is currently banned from doing so.

## CAUSES OF ACTION

### CLAIM I: Violations of Title III of the Americans with Disabilities Act

45. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

46. At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to Defendant's conduct.

47. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of seeing, hearing and speaking, and is therefore an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

48. Defendant owns, leases, and/or operates a place of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(F).

49. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

50. Title III of the ADA defines discrimination to include denying participation or offering unequal or separate benefit to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A).

51. Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

52. Defendant discriminated against Plaintiff on the basis of his disability in violation of the ADA.

53. The ADA also prohibits retaliation against any individual who has "opposed any act or practice made unlawful by" the ADA. 42 U.S.C. § 12203(a).

54. The Defendant violated the ADA by failing to provide necessary auxiliary aids and services for effective communication, refusing reasonable modifications to policies, disregarding

Mr. Hearts' preference for in-person ASL interpretation, insisting on ineffective VRI services for his medical procedures, and retaliating against him by permanently banning him from all Peachy locations for requesting accommodations.

55. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorney's fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

### CLAIM II: Retaliation in Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12203

56. Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodations, advocating for his rights to effective communication, enlisting the support of All Hands In Motion, LLC to secure appropriate accommodations, and opposing Defendant's discriminatory practices through proper channels.

57. Defendant retaliated against Plaintiff by permanently banning him from all Peachy locations, falsely labeling him as an "abusive bully," and refusing to consider his willingness to use VRI services after his protected activity.

58. A causal connection between Plaintiff's protected activity and Defendant's adverse actions is evident from the timing of the accommodation requests, the pretextual nature of the stated reasons for the ban, Defendant's hostile escalation in response to Plaintiff's advocacy, and the disproportionate severity of the retaliation.

59. As a direct result of Defendant's retaliatory conduct, Plaintiff has suffered ongoing harm, including emotional distress, humiliation, and loss of access to necessary medical services.

### CLAIM II: Violations of the New York City Human Rights Law

60. Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

61. At all times relevant to this action, the NYCHRL has been in full force and effect and has applied to Defendant's conduct.

62. The NYCHRL must be construed liberally to accomplish its "uniquely broad and remedial purposes." N.Y.C. Admin. Code § 8-130(a).

63. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activities of hearing and speaking and has therefore been a qualified individual with a disability within the meaning of N.Y.C. Admin. Code § 8-102(16)

64. At all times relevant to this action, Defendant has operated a public accommodation within the meaning of N.Y.C. Admin. Code § 8-102(9) and has been a covered entity within the meaning of N.Y.C. Admin. Code §§ 8-102(1) & (17).

65. Pursuant to N.Y.C. Admin. Code § 8-107(4), it shall be unlawful discrimination for "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of . . . disability . . . of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

66. Pursuant to N.Y.C. Admin. Code § 8-107(15)(a), a covered entity "shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

67. The NYCHRL further requires that places of public accommodations engage in a "cooperative dialogue" with persons who are or may be entitled to an accommodation. N.Y.C. Admin. Code § 8-107(28). This obligation requires a public accommodation to "engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a

requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8-102.

68. Plaintiff is an aggrieved person within the meaning of N.Y.C. Admin. Code § 8-502(a), which extends a cause of action and relief to "any person claiming to be aggrieved" by the discrimination of a person on the basis of his disability.

69. Defendant discriminated against Plaintiff on the basis of his disability by withholding the accommodations, advantages, facilities, or privileges of Defendant's services in violation of N.Y.C. Admin. Code § 8-107(4)(1)(a); by failing to effectively accommodate Plaintiff's disability in violation of N.Y.C. Admin. Code § 8-107(15)(a); and by failing to engage in a cooperative dialogue in violation of N.Y.C. Admin. Code § 8-107(28).

70. Without injunctive relief, there is a clear risk that Defendant's actions will recur with Plaintiff or other deaf and hard-of-hearing individuals.

71. Plaintiff is entitled to damages even if the "only injury is the deprivation of a right granted or protected by [the statute]." N.Y.C. Admin. Code § 8-502(h)(2).

72. The NYCHRL also prohibits retaliation against any person for opposing discriminatory practices. N.Y.C. Admin. Code § 8-107(7).

73. Defendant violated the NYCHRL by denying Plaintiff full and equal access to its services, failing to provide reasonable accommodations, and refusing to engage in a cooperative dialogue about accommodation options.

74. Additionally, Defendant retaliated against Plaintiff for requesting accommodations by permanently banning him from all locations

75. Plaintiff seeks an award of compensatory damages for the injuries and loss sustained as a result of Defendant's discriminatory conduct pursuant to N.Y.C. Admin. Code § 8-

502(a).

76.    Plaintiff also seeks an award of punitive damages to rectify and deter Defendant's discriminatory conduct pursuant to N.Y.C. Admin. Code § 8-502(a).

77.    Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to N.Y.C. Admin. Code § 8-502(g).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.    Declare that Defendant's actions violate Title III of the ADA and the NYCHRL

B.    Issue an injunction forbidding Defendant from implementing or enforcing any policy, procedure, or practice that denies deaf individuals meaningful access to, and full and equal enjoyment of, Defendant's facilities, services, or programs in violation of the ADA and the New York City Human Rights Law;

C.    Issue an injunction ordering Defendant to:

   i.    Provide appropriate auxiliary aids and services, including in-person ASL interpreters when necessary for effective communication;

   ii.   Modify its policies and procedures regarding accommodation requests;

   iii.  Rescind the ban against Plaintiff from Peachy locations;

   iv.   Implement appropriate training for staff regarding disability accommodations and communication

   v.    Develop and implement policies for evaluating requests for auxiliary aids and services

   vi.   Establish procedures for engaging in cooperative dialogue regarding accommodation requests.

D. Award to Plaintiff:

    i.    Nominal damages under the NYCHRL;

    ii.    Compensatory damages under the NYCHRL;

    iii.    Punitive damages under the NYCHRL;

    iv.    Reasonable costs and attorney's fees under the ADA and NYCHRL

    v.    Interest on all amounts at the highest rates and earliest dates allowed by law; and

    vi.    Any and all other relief that this Court deems just and appropriate.

Dated: April 9, 2025

Respectfully submitted,

**EISENBERG & BAUM, LLP**

/s/Andrew Rozynski
Andrew Rozynski, Esq. (NY#505446)
24 Union Square East, Penthouse
New York, NY 10003
Telephone: (212) 353-8700
Fax: (917) 591-2875
arozynski@eandblaw.com
*Attorneys for Plaintiffs*